**BANKS et al. v. COMMERCIAL STAND-
ARD INS. CO. et al.**

No. 5563.

Court of Appeal of Louisiana. Second
Circuit.

Dec. 3, 1937.

Jack & Jack, of Shreveport, for appellants.

Wilkinson, Lewis & Wilkinson, Garland
& Johnston, and Barksdale, Bullock, War-
ren, Clark & Van Hook, all of Shreve-
port, for appellees.

TALIAFERRO, Judge.

These consolidated suits of Jeff Banks
and A. L. Smith against Charles A. Brown,
Willis, Inc., and its public liability insurer,
Commercial Standard Insurance Company,
are the sequence of an accidental colli-
sion between the Chevrolet coupé of plain-
tiff A. L. Smith and a new Plymouth
sedan of Willis, Inc., at the time being
driven by its employee, said Charles A.
Brown. The coupé was occupied by Smith,
the owner, and by Jeff Banks, a colored
man, the driver. This vehicle was travel-
ing easterly on paved highway No. 80.
The Plymouth was going westerly. The
collision occurred on the descending grade,
as one goes east, just beyond the east
end of the bridge over Red Chute, which
was then being replaced by a new one,
a distance of eight miles from the city
of Shreveport, and at about the hour of
2 o'clock a. m., June 18, 1936. Smith and
Banks each sues for damages for physical
injuries received in and as a result of
the collision. Smith also sues to recover
the value of his car which was destroyed
by the impact, and Banks also sues for
loss of wages.

Plaintiffs allege freedom from negli-
gence on their part as a cause, or con-
tributing cause, of the accident, and charge
that it was due solely to the negligence
and carelessness of defendant Brown who,
it is further alleged, was at the time upon
a mission for his employer, Willis, Inc.,
and acting within the scope of his em-
ployment. The specific acts of negligence
with which Brown is charged are: That
he was driving his car at a dangerous
and excessive rate of speed, on a down
grade; did not have it under control, due
to his intoxicated condition, and collided
head-on with petitioner's car while on
its proper (right) side of the highway.

In his answer, Brown admits the acci-
dent, but denies that it was caused by any
negligence on his part. He charges plain-
tiffs with the sole responsibility therefor,
and sets up in detail the facts upon which
he bases this conclusion. In view of the
present status of the case, as concerns
Brown, we omit epitome of the array of
facts alleged upon by him. He admits
that he was at the time of the collision
on a mission for and to the knowledge

of his employer, and was acting within the scope of his employment.

Willis, Inc., and the insurer deny generally the allegations of the petitions, and specially that Brown was on a mission for Willis, Inc., when the accident happened, or was then performing any duty of his employment. They further deny that he was then using the Plymouth car with his employer's consent, but, on the contrary, aver that the use he was making of it was contrary to specific instructions given him.

The lower court upheld the contentions of Willis, Inc., and its insurer that Brown was not on a mission for the former when the collision occurred, and the demands against these defendants were rejected. Responsibility for the accident was fixed upon Brown, and judgments rendered against him as follows: For Smith, $220; for Banks, $1,040, with legal interest from judicial demand.

Brown did not appeal. As to him the judgments are final. Plaintiffs appealed. They complain of error by the lower court in rejecting their demands against Willis, Inc., and its insurer. Banks prays for an increase in the award in his case.

We have diligently studied the testimony pertinent to the charges of negligence and carelessness against Brown, and have reached the same conclusion thereon as did the trial judge. Brown alone was responsible for the accident and its results; and, further, being of the opinion that the evidence fully warranted the lower court in rejecting plaintiffs' demands against Willis, Inc., and its insurer, we shall confine our discussion of the case mainly to this phase of it.

Plaintiffs invoke and rely upon the well-recognized doctrine that in a suit for damages against an employer, growing out of an accident involving a vehicle owned by him or under his control and being operated at the time by his employee or agent, proof of these two facts makes out a prima facie case for plaintiff; that is to say, that a presumption arises from these facts that such employee was at the time acting for his employer and within the scope of his employment. Such a case, of course, is rebuttable by testimony sufficient in weight to overcome it. This has been done in the present cases.

Willis, Inc., is a one-man corporation. It is owned and operated by Mr. U. E. Willis. Its business is that of dealer in automobiles, and at the time of the accident its activities were confined to the buying and selling of Plymouth and Chrysler cars. It began business in Monroe on May 5, 1936, only 44 days prior to the accident. Brown, whose abilities as a salesman were recognized by Mr. Willis, was employed and came to Monroe on or about May 18th. The families of both men remained in Shreveport, their former residence. This company was acquiring its supply of new cars through George Morris, Inc., of Shreveport, distributors. Cars would be delivered to Willis, Inc., on trust receipt. When a delivery of cars was made, a note for the price thereof was given. Among the conditions of the trust receipt is one that forbade the use of the cars, even for demonstration purposes, while in the dealer's possession. Sales could only be made with the consent of the Commercial Credit from whom, the trust receipt states, the cars were procured. The signing of the purchase price note and trust receipt by Willis, Inc., were conditions precedent to the delivery of cars to it. The Plymouth car involved in the accident was held by Willis, Inc., under such a receipt.

Brown testified that on the morning of June 17th, he discussed with Willis the trip to Shreveport to see about getting additional cars for the Monroe business, and that Willis knew he intended making the trip that night in the new Plymouth sedan. Willis denies this emphatically. When asked to explain why he was so late at night making the trip, Brown said he left Monroe at about 6:30 p. m., and drove to near Bastrop, La., to see a prospective purchaser, but failed to contact him. He then retraced his route and passed through Monroe en route to Shreveport, without stopping there at all, but did stop in West Monroe. He said he left the city limits of Monroe about 9 o'clock. After leaving West Monroe he made no stops prior to the collision.

On July 7th, Brown was interviewed by the adjuster of the insurance company. He gave a full and detailed account of the collision and of antecedent events to the time he says he left Monroe to see the prospect near Bastrop. He had evidently forgotten that he had signed the statement, or else had forgotten some of the material facts therein related by him. He said therein that he left Monroe about midnight (which we think is true) to return to his home in Shreveport, and that

the "object of the trip to Shreveport was to see about my Soldier's Bonus and also to see about delivery of four automobiles from George Morris, Inc." He also says therein that he was traveling at a rate of 60 miles per hour when going down Red Chute hill. In his testimony he said that he traveled not over 50 miles per hour, as the Plymouth car had only been driven some 200 miles. When confronted with this written statement, he equivocated at time by saying the principal purpose of his trip to Shreveport was to get the cars, and again by denying that the bonus had any influence upon the making of the trip at all. However, he did receive the bonus four or five days after the accident; and we are convinced that the desire to learn the status of the expected bonus and to visit his family were the motivating purposes of the trip.

Brown's testimony, by this written statement and the testimony of several witnesses, has been effectually impeached. It is proven to our satisfaction that he was in Willis, Inc's., place of business trying to consummate a sale of a car to a Mr. Lippan until about 7:30 o'clock, the evening of June 17th, and, becoming impatient at the prospect's indecision, "walked out." The sale was then closed by Mr. Willis and another salesman. Willis and his wife then went to the Francis Hotel, where they and Brown were staying, for supper. Mr. and Mrs. Willis testified that at about 8 or 8:30 o'clock, Brown came to the door of their room and asked Mr. Willis' permission to demonstrate the Plymouth car that night to a prospective buyer in Monroe, and that his request was refused, with instructions to put the car in this defendant's garage. Their testimony on this point is definitely corroborated by these undisputed facts: Mr. Lippan found that the battery of the car he had just purchased from Willis, Inc., was dead. He reported this fact to Willis at the hotel, and stated he would need brief use of a car early next morning. Willis then wrote a note to Brown and directed him to bring the Plymouth to the hotel and leave it on the parking lot adjacent thereto for the use of Lippan the following morning. This note was affixed to the door of Brown's room, but, of course, was not seen by him, as he did not return to the hotel that night. Had Willis known that Brown was en route to Shreveport in the Plymouth car, it is certain he would not have written such a note and expected him to

receive it and follow the instructions therein given.

Prior to the date of the accident, Willis, Inc., secured, at different times and in different numbers, cars from the Shreveport distributor. Before coming for them, it was ascertained by phone whether the kind, color, etc., desired were on hand. If so, either Mr. Willis or he and Brown would come to Shreveport and arrange to have the acquired cars driven to Monroe. This being true, it seems rather unreasonable to think that Brown would be sent at night to Shreveport to select cars for the company at an expense much greater than telephoning would incur, and that, too, in a new automobile the use of which on such a trip is in direct violation of the terms of the trust receipt under which it was held. The positive testimonial proof clearly supports defendants' position in the case. The circumstances related, and others unnecessary to mention, strengthen this proof.

■ As regards Jeff Banks' injuries, etc., the lower court found as follows:

"His bodily injuries consisted of a cut of 1½ inches on the face in front of the left ear necessitating three stitches; a wound on the left side of the nose; a swollen wrist and knee; and a cut of some four inches on the right shin, requiring five stitches, in addition to the injury to his teeth to be mentioned hereafter. He was unable to work for a period of four weeks. His wages amounted to $10.00 per week. For the injuries detailed above, we conclude that an allowance of $500 would be proper, plus $40.00 for loss of wages.

"Jeff Banks received a blow to the head, aforesaid, which caused five teeth to be loosened by the lick. Upon examination by a dentist he recommended the removal of one of the teeth. The other four were considered safe to remain in the jaw, although they were loose at the time, but at the time of trial all of the dentists agreed that they had become firm and at the time were as serviceable as they had been before the accident. The majority of the dentists for both sides agree that the teeth are dead and sooner or later might give trouble, and if so they will have to be removed. Jeff Banks is a negro 38 years of age and has no physical ailments; and at the time of the trial, six months after the accident, no trouble had developed from the loosening or deadening of the teeth. It is problematical if

any will develop. Plaintiff testifies that he can chew with them all right and can use them, 'I imagine about like false teeth.'

"The evidence relative to the teeth took quite a wide range, but timely objection was made against the introduction thereof, which would enlarge the pleadings, and the evidence was so admitted. Plaintiff's petition sets out that the injuries received were 'the loss of use of four teeth as they are loosened and the nerves killed and said teeth are now dead.' The evidence shows that the plaintiff has lost the use of only one tooth and that is the one which was extracted; therefore, there will be judgment for $500.00 on account of such loss."

We think the amounts awarded this plaintiff adequate.

For the reasons herein assigned, the judgments appealed from are affirmed, with costs.